Francisco T. **Wabol**,
Plaintiff/Appellee,
**v.**
Teresita T. **Camacho**,
Defendant/Appellant.
Appeal Nos. 94-036 & 94-047
Civil Action No. 94-0140
June 4, 1996

Argued and Submitted April 11, 1996

Counsel for appellant: G. Anthony Long, Saipan (Long & Brown).

Counsel for appellee: Timothy H. Skinner, Saipan.

BEFORE: VILLAGOMEZ and ATALIG, Justices, and SALAS, Special Judge.

ATALIG, Justice:

■ The defendant, Teresita T. Camacho ("Camacho"), appeals from the grant of summary judgment in which she was ordered specifically to pursue litigation against third parties, and to pay attorney's fees to the plaintiff, Francisco T. Wabol ("Wabol"). This Court has jurisdiction pursuant to 1 CMC § 3102(a). We hold that the trial court erred in concluding that Wabol was entitled to summary judgment. Accordingly, we reverse both the grant of summary judgment and the award of attorney's fees.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

The dispositive issues on appeal are whether the trial court erred in: (1) granting summary judgment in favor of Wabol; (2) ordering Camacho specifically to pursue litigation against third parties; and (3) awarding Wabol attorney's fees in the amount of $11,340.80.[1]

■ Since the first two issues arise within the context of a grant of summary judgment, they are reviewed de novo. *Rios v. Marianas Pub. Land Corp.*, 3 N.M.I. 512, 518 (1993). In our review, we examine the evidence in the light most favorable to the nonmoving party and affirm if "there was no genuine issue of material fact and . . . the trial court correctly applied the substantive law." *Id.*

■ We review the award of attorney's fees for an abuse of discretion. *Pangelinan v. Itaman*, 4 N.M.I. 114, 117 (1994).

## FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 1988, Camacho (seller) and Wabol (buyer) executed an "Agreement for Purchase of Real Property" ("Agreement") for two parcels of land, referred to as Parcel A and Parcel B, on Saipan. *See* Excerpts of Record at 121-28.

Parcel B, the lot in dispute, is currently leased by Camacho to third parties James Edwin Musick and Maxine Lee Musick ("Musicks"). The lease was executed on July 14, 1980. *Id.* at 122.

Paragraph 2.3 of the Agreement provides that the

> [s]ale and purchase of [Parcel B is] specifically conditioned upon obtaining a release of the lease or an assignment of the leasehold unto [Wabol], and the parties covenant and agree that they will attempt in good faith and use best efforts within reason to obtain such release or assignment within sixty (60) days of the date [of the Agreement].

*Id.* at 123.

Under the Agreement, the purchase price of Parcel B was $50,000, of which $10,000 was paid by Wabol as earnest money. The remaining $40,000 was to be paid upon the closing of the sale of Parcel B. *Id.*

Paragraph 3.2 of the Agreement provides for title insurance and the examination of title, and

> [i]n the event that the commitment for the title insurance policy, or any other title search or report, discloses any defect in [Camacho's] title affecting [her] ability to transfer clear, good, and marketable title, then . . . [Wabol] shall have the right at [his] sole option to (a) waive the defect and require [Camacho] to specifically perform the transaction . . . (b) require [Camacho] at [her] expense to cure such defect with[in] a reasonable time . . . and thereafter to specifically perform this agreement, or rescind this agreement and recover the earnest money back from [Camacho] and any consequential

---

[1] Camacho also contends that the matter was not ripe for summary judgment because there are genuine disputed issues of material fact with respect to Wabol's compliance with his duty to negotiate in good faith. Specifically, these issues are whether Wabol: (1) was ready, willing, and able to perform under the contract; (2) undertook any act to seek release or assignment of Parcel B; (3) breached his duty of good faith and fair dealing; and (4) sought specific performance for speculative purposes. However, these factual issues are not relevant to our disposition of this matter. Accordingly, the issues are not "genuine." *See Castro v. Hotel Nikko Saipan, Inc.*, 4 N.M.I. 268, 272 (1995), *appeal dismissed*, 96 F.3d 1259 (9th Cir. 1996).

and incidental damages to which [Wabol] may be entitled.

*Id.* at 124.

Paragraph 4.1 of the Agreement states that if Camacho was unable to fulfill any of her obligations or failed to perform under the Agreement, Wabol would have the option of either: (1) terminating the Agreement and having Camacho refund the money advanced as well as compensation for "all incidental and consequential damages incurred . . . as a result of the breach," or (2) seeking specific performance of the Agreement. *Id.* at 125.

Finally, Paragraph 5.2 of the Agreement states that "[i]n the event either party shall bring an [sic] court proceeding for interpretation or enforcement of this Agreement the prevailing party shall be entitled to recover from the other as part of the judgment of the court the party's reasonable attorneys fees, expenses, and costs of the action." *Id.* at 125-26.

On or around October 12, 1988, the end of the term of the Agreement, Camacho had not secured either a release or an assignment of the lease on Parcel B. On February 3, 1989, Camacho and Wabol executed a "Memorandum Extending Agreement for Sale of Real Property" ("Memorandum"). *Id.* at 118-20. Under the Memorandum, the parties agreed to "continue in good faith to use best efforts within reason to satisfy the special condition at Paragraph 2.3 upon reasonable terms." *Id.* at 119. Camacho also acknowledged receipt of the $10,000 which Wabol had previously paid as earnest money to be applied to the purchase of Parcel B. *Id.*

Paragraph 3 of the Memorandum states that:

If it becomes apparent to Buyer that negotiations with [the Musicks] are not likely to succeed in resolving the special condition at Paragraph 2.3, then [Wabol] may, at [his] option, cancel and terminate the Agreement as to Parcel B. If the transaction has not been executed within five years from [February 3, 1989], the Agreement shall automatically expire and terminate as to all land not by then actually conveyed.

*Id.*

Paragraph 4 of the Memorandum provides "[i]n the event the Agreement shall be terminated or canceled, [Camacho] shall repay [the $10,000] to [Wabol] forthwith." *Id.*

Subsequently, Camacho twice wrote to Wabol attempting to terminate the Memorandum. Wabol responded by stating that only he had the option of

terminating their agreement. *Id.* at 45-47. On February 19, 1991, Camacho filed suit against the Musicks for having breached the lease agreement. *Id.* at 38.

On February 3, 1994, one day after the expiration of the Memorandum, Camacho notified Wabol that she was willing to return the $10,000. *Id.* at 115-16. On February 14, 1994, Wabol filed a complaint for breach of contract. The complaint sought to compel Camacho to expedite the resolution of the action against the Musicks and to compel Camacho to transfer title to Parcel B to him if she was successful in that action. He also sought attorney's fees and costs. Camacho filed her answer on March 10, 1994. Wabol then moved for summary judgment.

The trial court concluded that Camacho breached the Memorandum by failing to use her best efforts to secure either a release or an assignment of the Musicks' lease. The court also found that she breached her implied duty of good faith by attempting unilaterally to cancel the agreement and by failing to use her best efforts to obtain a release or assignment. *Id.* at 22-23.

In granting summary judgment in favor of Wabol, the trial court held that the Memorandum could be specifically performed and ordered Camacho to "expeditiously resolve the litigation she commenced" against the Musicks and, if she was successful, to transfer Parcel B to Wabol. *Id.* In a separate order filed on October 13, 1994, the trial court also awarded Wabol attorney's fees in the amount of $11,340.80. *Id.* at 18.

Camacho timely appealed from both orders.

## ANALYSIS

### I. Whether the Summary Judgment Granting Specific Performance was Proper

 Wabol conceded at oral argument that the Agreement as extended by the Memorandum was an option contract which gave him the option to purchase Parcel B notwithstanding the Musicks' lease. An "option" constitutes "a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." RESTATEMENT (SECOND) OF CONTRACTS ["CONTRACTS"] § 25 (1981).[2] During the option period, the promisee may either accept or reject the offer. At the end of the period, the promisee's power of acceptance terminates automatically. *Id.*, §§ 25, 37, and 41.

---

[2] *See Diamond Hotel Co,, Ltd. v. Matsunaga*, 4 N.M.I. 213, 217 (1995), *aff'd*, 99 F.3d 296 (9th Cir. 1996).

■■■ The party seeking specific performance of an option contract bears "the burden of proving the existence of a valid, enforceable, and properly exercised option." *Eurotex (Saipan), Inc. v. Muna*, 4 N.M.I. 280, 283 (1995). This is because an "option ripens into a bilateral contract when the offeree properly accepts it." *Id.*, 4 N.M.I. at 285-86. Only at this point is an option contract specifically performable. *Aldan-Pierce v. Mafnas*, 2 N.M.I. 122, 145 (1991), *rev'd*, 31 F.3d 756 (9th Cir. 1994).

■ Here, the Memorandum created a five-year extension of the option to purchase Parcel B. During the five-year period, Camacho's right to revoke the offer of sale was limited, and Wabol had the option either to purchase the property as encumbered by the Musicks' lease, or wait until after Camacho obtained a release or assignment within the five-year period. Camacho's duty to transfer Parcel B to Wabol would not arise until the latter exercised his option. However, the five years ended without Wabol having exercised either option. In order words, at the end of that period the Memorandum and Agreement and Camacho's obligations under them ended.[3] Wabol's stated preference of purchasing Parcel B without the Musicks' leasehold interest did not serve to extend the time within which he was entitled to accept the offer under the Memorandum and the Agreement. It was error for the trial court to grant summary judgment based on obligations which had extinguished prior to the commencement of the action, and to order specific performance under an unexercised option agreement. Instead, the appropriate remedy would have been to order the return of the earnest money.

■■■ We disagree with Wabol's contention that the Memorandum and Agreement imparted a duty upon Camacho to pursue litigation against the Musicks. "Words . . . are interpreted in the light of all circumstances . . . [and] writings that are part of the same transaction are interpreted together." CONTRACTS § 202(1), (2). Viewing the facts in the light most favorable to Camacho, and the "reasonable meanings" of contract terms against their drafter,[4] Wabol, we conclude that the Memorandum and Agreement imparted only a duty to negotiate with the Musicks. Neither the Memorandum nor the Agreement made any mention of litigation as a

means by which Camacho or Wabol was to pursue a release, nor is litigation against the Musicks clearly contemplated by the contractual language "best efforts within reason." Finally, Paragraph 3 of the Memorandum specifically referred to negotiation as the means of "resolving the special condition" of a release or assignment of the lease. The terms "negotiation" and "litigation" mean two different processes. Reading the Memorandum and Agreement together, they imparted no more than a duty of good faith to negotiate with the Musicks. This duty was extinguished at the end of the five-year term.

We hold that the court erred in concluding that, as a matter of law, the Memorandum gave rise to a continuing duty on Camacho's part to pursue litigation against the Musicks. Moreover, since Wabol never exercised either of his options under the Memorandum or the Agreement, specific performance was an inappropriate remedy.

## II. Attorney's Fees

In light of the above ruling, we need not reach the issue of whether the specific amount of attorney's fees awarded was excessive and constituted an abuse of the trial court's discretion.

■■■ Under Paragraph 5.2 of the Agreement, the parties agreed that if one of them brought a court proceeding for interpretation or enforcement of the Agreement, then the prevailing party would be entitled to recover attorney's fees. Excerpts of Record at 125-26. Camacho has ultimately prevailed on the issue of whether she was required to pursue litigation against the Musicks. Therefore, under the terms of the Agreement she is entitled to attorney's fees.[5]

## CONCLUSION

■■■ Based on the foregoing, we **REVERSE** both the grant of summary judgment and award of attorney's fees and **REMAND** this matter for the trial court to formulate and enter an award of attorney's fees in favor of Camacho, with no interest under Com. R. App. P. 37. The trial court may consider arguments with respect to any offset of this award that may be merited by the return of the earnest money.

---

[3] Wabol contends on appeal that "he stood ready and willing to deliver the remainder of the purchase price." Excerpts of Record at 62. This declaration, made more than five months after the expiration of the five-year period, is irrelevant to the issue of whether he properly exercised the option.

[4] RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981).

---

[5] *See Camacho v. L & T Int'l. Corp.*, 4 N.M.I. 323, 330 (1996).